My final argument, 2011-11-15, General Protecht v. Leviton. While everybody is getting settled in and before we begin, I have a question with respect to confidentiality and what we are permitted to discuss and what we are not. For example, the CSA, the agreement in question here is marked in the appendix as being confidential in its entirety, as I see it, but yet it appears in places in the briefs and it appears in the opinion of the court below. So my question is, are we in some way restricted or impeded in discussing that agreement or the terms thereof? MR. GENERAL PROTECHT v. GEN. LEVITON Quick answer is I don't believe so. It was submitted as confidential below because there is a confidentiality provision and there are parties to that agreement who aren't parties to this case. So to be on the safe side, I think the parties agreed to submit it confidentially. MR. GENERAL PROTECHT v. GEN. LEVITON That is not what you are supposed to do. That is improper. We have just sanctioned somebody for doing this sort of thing. You are supposed not to mark stuff confidential just because it seemed like a good idea. You are supposed to mark things confidential because there is actual confidential information in there. You are supposed to demonstrate that to the district court. It is supposed to be limited. It is not just a casual thing that you are supposed to do. MR. GENERAL PROTECHT v. GEN. LEVITON We certainly didn't do it casually, Your Honor. There is a confidentiality provision in the agreement that forbids its disclosure and there were parties to that agreement who are not parties to the case and so we submitted it. The judge, in his opinion, discussed the pertinent provisions of it in his public opinion and I believe those provisions are probably provisions that the parties didn't believe probably contained the confidential information of the third parties who were not involved. MR. GENERAL PROTECHT v. GEN. LEVITON How could it be confidential before us if it is in a public opinion which is the subject  MR. GENERAL PROTECHT v. GEN. LEVITON I suggest there are portions of it that aren't in the public opinion of the judge that could  MR. GENERAL PROTECHT v. GEN. LEVITON Well, then maybe those parts should have been labeled confidential, but there is no basis whatever for labeling the whole thing as confidential. MR. GENERAL PROTECHT v. GEN. LEVITON I agree with that. I think the portions that are discussed and disclosed in the opinion below, which is a public opinion, should not be on the confidential record and if the court wants us to adjust the appendix to reflect that, we can do that. MR. GENERAL PROTECHT v. GEN. LEVITON The problem is that the appendix is not adjusted as we sit here today and so the concern is that we are going to discuss things that we shouldn't be discussing publicly and we don't   MR. GENERAL PROTECHT v. GEN. LEVITON Well, the pertinent provisions that the parties briefed were all in the opinion below, which is a public document, and I don't anticipate that we're going to be talking about any provisions that the judge below didn't discuss. MR. GENERAL PROTECHT v. GEN. LEVITON So you're saying that any provisions we should deem and we'll see if opposing counsel agrees, but you're saying that any provisions in the confidential agreement that are cited in the MR. GENERAL PROTECHT v. GEN. LEVITON We believe they can and we've discussed them and quoted them in our public briefs that  MR. GENERAL PROTECHT v. GEN. LEVITON All right.  MR. GENERAL PROTECHT v. GEN. LEVITON Yes, Your Honor. The only thing that the appelees consider confidential are the circuit diagrams describing GPG's technology. So I believe we can conduct fully the discussion about this, the issues in this case, without  MR. GENERAL PROTECHT v. GEN. LEVITON So why didn't you mark the circuit diagrams as confidential instead of the whole agreement? MR. GENERAL PROTECHT v. GEN. LEVITON I believe that we discussed this with Leviton and Leviton's view was that the entire thing needed to be marked as confidential and we didn't have any basis to dispute that because of the party's prior agreement and agreement with non-parties that everything was confidential, just as Mr. Schatzer has described. So our hands are sort of tied when there's an actual agreement that doesn't include all the parties to the case. MR. GENERAL PROTECHT v. GEN. LEVITON We were concerned that if we disclosed the entire thing, a party to the agreement who's not a party to this case could come in and accuse us of violating the confidentiality  MR. GENERAL PROTECHT v. GEN. LEVITON And if I may say one other thing, there's a damages provision that says if you do it, you have to pay damages. MR. GENERAL PROTECHT v. GEN. LEVITON All right. Well, let's proceed and see where we are and I do agree that probably the things we'll be focusing on in any event are in the opinion of the district court and those are not marked confidential. So on that, let's proceed. Mr. Schatzer, good afternoon. MR. GENERAL PROTECHT v. GEN. LEVITON Good afternoon. Police Court Larry Schatzer on behalf of the appellant Leviton Manufacturing Company. Leviton is here today to ask this court to correctly interpret the party's 2000 settlement agreement so as to ensure that the agreement is limited to what the parties agreed to at the time, the bargain they struck, and that is to resolve a litigation that was ongoing at that time that was limited to the 566 and 776 patent and the 558 patent and nothing  MR. GENERAL PROTECH v. GEN. LEVITON It's correct to say that what we have to do is determine what was granted in the original agreement, confidential agreement, and then determine whether or not the action for the ITC and the action in the district court with respect to the other two patents derogates  MR. GENERAL PROTECH v. GEN. LEVITON That's right. That's the two-part test. And the court in Ames said that the first part of the test, what you look at is the manifest intent of the parties and we think that's where the focus should be in this action is what did the parties intend. And considering that issue, the court in Ames tells us we need to look at the agreement  JUSTICE SCALIA Isn't the issue before us the choice of forum provision and whether the choice of forum is appropriate for the New Mexico court to  MR. GENERAL PROTECH v. GEN. LEVITON I think the first question is the employed license question. And if the court finds that the agreement did grant an implied license, I think the forum selection clause is implicated because then the action would arise under or relate to the settlement agreement. If the determination is that there is no implied license, then the agreement is really irrelevant to the parties' dispute under the newer issued patents. And so the forum selection clause isn't implicated. And if you look at the district court's decision JUSTICE SCALIA But isn't the question of whether there is or is not an implied license a question that doesn't necessarily have to be answered in order to determine whether the New Mexico court properly had jurisdiction under the  MR. GENERAL PROTECH v. GEN. LEVITON We think it does. We think that and that's the analysis the district court actually did. He looked at the implied license issue and then based on that he said you combine that with the forum selection clause, this case should be here and I'm going to issue the injunction that I'm going to issue. JUSTICE BREYER In other words, I think what I'm getting at is isn't it enough that there's a determination that whether there's an implied license or not is sort of an issue that is facially presented in the agreement without making a determination as to whether an implied license exists or the extent of that implied license. MR. GENERAL PROTECH v. GEN. LEVITON Well, the district court went further and they made a conclusion of law and that issue is before this court. I mean, I guess if it's found that way, we could go back down here and we might come back on summary judgment in six months and be facing the same issue. So I'd suggest that for purposes of judicial economy, it's a question of law. It's in front of this court. JUSTICE BREYER In other words, if we find that there was at least a non-frivolous question of whether there was an implied license, that that would be enough to answer the question of whether the preliminary injunction was properly before the New Mexico court. MR. GEN. LEVITON But you don't want us to do that. You want us to. You both want us to try the implied license question. MR. GEN. LEVITON I don't think you want to see us again here in six months when we go down here and have summary judgment and we come back again. And I think this court can do that. And the judge below did that. He went through the whole analysis. He didn't say, Judge Lynn, you know, it's enough. I think there's an issue here and then I'm going to rely on the Forum Selection Clause. He said, I find there's an implied license. Now I look at the Forum Selection Clause.  There's no reason this Court in reviewing him can't do that. I think it's enough. MR. GEN. LEVITON And we suggest you should. I would note that this court in Wang, when it talks about implied licenses, said, judicially implied licenses are rare under any doctrine. And we think this is not one of those rare cases. As Judge Shaw said, it's a two-part analysis. We have to start with the intent of the parties, what rights were granted. There's at least four places in the agreement itself that tell us that this was a limited agreement. Limited to the 5-6-6, 5-5-8-7-6-9.  GEN. LEVITON How do you distinguish transcor? I mean, as I understand transcor, it sort of creates a presumption or rule of construction that if it's a continuation application and you asserted claims under, there was a settlement with respect to those, that it's going to be assumed to cover any new claims arising out of the same continuation application. MR. GOLDSMITH We don't talk about transcor because, for whatever reason, the court in transcor really didn't talk about intent. We think the Jacobs case is more pertinent. And if you read transcor, transcor tells us that. They tell us the court in Jacobs was differentiating between settlement terms for the express purpose of determining the contracting party's intent in the context of an implied license analysis. That's our case. That's what transcor said Jacobs was. They said, this is an exhaustion case. And Quanah tells us that we don't talk about or consider intent when we consider exhaustion. GEN. GILLESPIE And that they held that there was an implied license to the later patents. I suppose we read it that way. Is it distinguishable? MR. GOLDSMITH It is because intent is a case-by-case analysis, and transcor really doesn't talk about intent when they get to implied license. They disregard that issue. And that's why I think Jacobs is more pertinent, because in Jacobs you have the interesting situation where you have a covenant not to sue and a license in the same settlement agreement. And this court said that there was an implied license, but it didn't flow out of the covenant not to sue, which was very similar to the one here. GEN. GILLESPIE Yeah, but Jacobs also didn't say that there wasn't an implied license out of the covenant not to sue, right? MR. GOLDSMITH Well, it did characterize, though, the covenant not to sue as being limited. And it did so when it said, quote, if all that Jacobs intended to do through the settlement agreement was to free analog of its liability for infringement, paragraph 5 of the agreement, the covenant not to sue, would have been fully sufficient to serve that purpose. But the court went on to say that they went further. They gave him an irrevocable, perpetual, fully paid-up license. And that created the— GEN. GILLESPIE But the point is we don't have a holding in Jacobs that the covenant not to sue didn't create an implied license, right? MR. GOLDSMITH I think by negative inference you do, because they said that the covenant not to sue only released liability. GEN. GILLESPIE My question was explicit holding.  GOLDSMITH Yes, it's by negative inference. Yes, I agree with that.  And so— GEN. GILLESPIE Of course, Jacobs talked about those two provisions, the covenant not to sue and the license. And the distinction, of course, is that the covenant not to sue was with respect to the accelerometers. The license went further and made it clear that the customers who would use those accelerometers in their completed devices would also be free of any liability.   Yes. GEN. GILLESPIE So wasn't that really the distinction that was being drawn between the two? It's not that you could not have an implied license in a covenant not to sue, or even that there's a difference between a covenant not to sue and a license. The difference is that the paragraph 5 was narrowly focused on the components that Jacobs was making, and the license explicitly went beyond that. GOLDSMITH We're not suggesting you can't have an implied license out of a covenant not to sue, and we're not suggesting that a covenant not to sue isn't a form of a license. What we're suggesting is that you have to look at the intent each time, and that in the parties used the term covenant not to sue, and they framed out what that meant, that the court, at least by negative inference, was finding that wasn't sufficient to create  GEN. GILLESPIE There was no issue in Jacobs about later patents or whether those were within the scope of the implied license. That wasn't even involved in Jacobs, right? GOLDSMITH No. GEN. GILLESPIE That's the key issue here is, I mean, you would certainly agree that there's a license with respect to the first two patents. GOLDSMITH There's a license with respect to the first two patents on the two enumerated products that the parties filled out in the agreement, and those two products narrowed it.  GILLESPIE So the question is, does that also extend to the later two patents under TransCorp? GOLDSMITH And I think that if you look at the intent of the parties and the context of what they were trying to do, which was settle the litigation at the time, and that litigation at the time related to those two patents and those two products, then the answer is no. They were just trying to solve the problem they had at the time. They wanted to get rid of that litigation. They weren't making an agreement about what might happen in the future. In fact, in the agreement, they made provision for what might happen in the future, what's going to happen to the New Mexico claim construction, what's going to happen to our inequitable conduct defense. And the reason those things were in that agreement was because the parties knew that if Levinson later got additional patents, there might be later litigation. And that was clearly in the intent of the parties at the time. They were trying to walk away. They were trying to dispense with that lawsuit and move on. And that was the scope of their agreement. The decision in the court below essentially turns the agreement on its head. The covenant not to sue was on two patents. It lists two product categories to narrow. Those two categories narrow the license. They don't broaden it. The agreement, as interpreted by the district court and as argued by Appleese, is they're claiming that they have the right to sell those two products regardless of which Levinson patent there might be. And that just turns it on its head. I'm not sure that's the argument, or at least if that is the argument, that's a pretty broad argument. I think the argument relates to the fact that all these patents grow out of the same specification, out of the same continuation application. I don't think they're arguing that if there were some unrelated patent that grew out of a different application, that that would be licensed. I think they're arguing they have a right to sell these products, period. Well, if that's their argument, I find it very difficult to go there. I mean, it seems to me that you have to say that where you have two patents that arise out of a continuation application, that if they go and get other patents out of the same continuation application covering the same subject matter, that those also are going to be treated as licensed. If that was the intent of the parties, I agree. But here, it's not clear that was the intent of the parties. In fact, the application that issued as the 124 patent was public two years before this agreement was entered into. No doubt, the appellees were aware of it. The agreement specifically... Wait, wait, wait. No doubt? I certainly can't imagine that you would enter into a settlement agreement like this one. So there's no evidence in the record they were aware of it? There's evidence that the parties took specifically in Section 4.1 of the agreement talked about what would happen if there were litigation on patents related to the 766 patent. But was there any testimony that they were aware of the pending patent application? No, it's by implication from Section 4.1 of the agreement where they talked about litigation on patents related to the 766 patent. But was that paragraph related to other products or the products in question here? It doesn't limit itself to other products. When the agreement talks about other products, it uses that term, like in Sections 2.1 and 2.2. Section 4.1 is open-ended. It doesn't limit itself to other products. Mr. Shancher, let me ask you a question. Sorry to revisit what was being discussed earlier in your time at the podium there, but is it conceivable, in other words, could the court properly, this court, properly conclude that, all right, the plaintiffs properly went before it to request a preliminary injunction, but then make the determination that the court erred on a determination of likelihood of success on the merits? I think that if you reach that issue and you found as a matter of law there was no implied license, that there would be no reason to send it back. But could the court procedurally do that? I'm not aware of any reason other than the fact that, as I said, we'd probably be back up here fairly quickly, you know, for reasons of judicial economy. But I think it also would affect likelihood of success on the merits. Everything below turned on the issue of implied license. And if there's no implied license, this agreement really is irrelevant to this lawsuit. Why couldn't somebody say, look, they're claiming a particular interpretation agreement. They go in to the New Mexico court and say, we're entitled to an injunction. The Mexico court says, yes, you do get your P.I. Then we look at it, and we have to determine whether or not the court properly determined whether it established likelihood of success on the merits, and we say either yes or no. If we said no, that's good for you. It is, because then the injunction is reversed and the cases go forward. What happens to the New Mexico case becomes an interesting question at that point. But we're primarily here to be able to proceed with our ITC case. And if we're able to do that, that is certainly what we've been deprived of by the error from the court below. If I could reserve the rest of my time for rebuttal. Could I ask you a minute? We had a case, I don't know, a few months ago about an ITC proceeding, which involved General Protech and other parties. Is that the same ITC proceeding that you wanted to be part of? It's not. It's a different case. It was brought by a different complaint that you're on. All right. Thank you. Mr. Long. Thank you. May it please the Court. I'm Bill Long, and I'm here on behalf of the Appellees, which are General Protech Group, which is the manufacturer, and then some of General Protech Group's distributors here in the United States. So one question that came up was, what is our argument about the extent of the implied license? So Mr. Shatzer said, well, you know, any patent, there are any patents ever issued they get a license to if it would prevent them from selling these products. That's not an issue that needs to be reached by this panel today. Do you agree that if some other patent that had nothing to do with this application and wasn't a continuation, that you don't contend that that would be covered by this agreement, do you? As I said, that's not an issue that's here today, but there is authority that would support that position, yes. The AMP case involved that very situation where there was an after-acquired patent, and also the spindle fabric case. The court there did not have that exact situation. They had that exact situation, but the subsequent patent was acquired by somebody other than the licensor. And that court hypothetically said that if the licensor had been the one who acquired the later patent, that would stop them from, that would extend and include an implied license. You couldn't stop them from selling the product. I think the distinction is a subtle one, but the distinction is does the license cover a particular patented product, a patented device, which is what we have in this case, versus a patent that does not specifically address what product it's going to be used on. That's a pretty extravagant argument. Well, that's not an issue today that we need to address. The simple fact is today we have patents that were a continuation, that the specifications in the old patents and the new patents are identical in every respect. They're the same drawing, same specification. There's no new invention there. And so, yes, today all you need to decide is that the appellees have an implied license to the new continuation patents. And you don't really have to decide that. All you have to decide today is that there's a colorable argument that there's a likelihood of success in the merits and that the court did not abuse its discretion in granting the PI. Does it make a difference whether the claims of these two new patents are narrower or broader or necessary for these products? In some instances, in some situations, that may be relevant. But when there is a specified product, when the parties agree, when the licensor or the patentee authorizes the licensee to sell a specific product, which is what we have today, then it doesn't really matter whether the claims are narrower or broader or something else. The question is— The agreement here is really not quite that simple. It's not, you know, we covenant not to sue with respect to that product. It's we covenant not to sue with respect to these two patents based on the sales of these products. Does that make a difference? Well, I—it might make a difference in some circumstances. It did not make a difference in the Amp case. The Amp case talked about there being the inability to sell the product in light of the later acquired patents. No, but doesn't it make a difference in the sense that on the one hand, it's all a question of, you know, to what are you derogating from? And if you are saying you have the right unimpeded to sell these products, period, then any later restriction on that right would be in derogation of that agreement. On the other hand, if you're saying you have a right to be free of infringement of these two patents with respect to the sales of your products, period, maybe that's a different story. The latter is the story that we're faced with today. So the latter is where it's the same invention— But that's why I'm asking the question. So, okay, I'm going to have to ask you to repeat your question. Does it make a difference between those two situations? Does it make a difference? In this case, do we really have a license, or let me rephrase it, do we have really a simple covenant with respect to those products, which therefore would prevent any derogation of that right, or do we have simply a covenant with respect to the two named patents, albeit through the sale of those products? Well, TransCorp used the word authorization, and I think that's very helpful in the present case to answer your question. So it's very clear that the parties intended, in this case, for Leviton to authorize the athletes to go forward with this product in the future. Well, suppose it weren't. Try this hypothetical. Suppose the agreement had been written exactly the same way, but it had another sentence on it that said, the parties understand that there is a pending patent application for an additional patent which may cover these products, and that we may apply for new patents in the future that would also cover these products under this same continuation application, and the parties do not license those new patents for these products. Suppose it said something that explicit. That is a completely different situation. Yes, I understand. And I can't believe that would grant a license. In that case, there would be no implied license. So to some extent, we're dealing with the intent of the parties. What we're dealing with then in TransCorp is perhaps a rule of construction that says, if you want to exclude future patents under the same continuation application, you've got to say it explicitly. I don't disagree with that reading of TransCorp. I don't disagree with that at all, and I certainly think that rule applies in this case. An argument can be made that there's an express license here because it's the same invention, and so is the patent only the claims or is it the entire disclosure of the patent? I think you've got to struggle with that because it only mentions the products and the two patents. It's not an issue here for this appeal. So I believe, back to Judge Lynn's question, I believe that narrower or broader, the question is, does the claim take back that express authorization to sell these products? And so in this case, Leviton is saying that it does. It's saying our new patents, even though they're the same invention, they're entirely the same, we can stop you, we can take back our authorization for you to sell even this new product in the future. And that is the kind of situation which the case law makes very clear that that is an improper attempt to derogate from the authorization granted, and implied license under legal estoppel stops that from happening. So another question that came up during Mr. Schatzer's discussion is the knowledge of the applications. So one thing is clear in the record. Leviton knew about the pending application. There were Leviton's applications. There is zero evidence that any of the appellees were aware of the applications. But that same situation existed in Transcor. In Transcor, there were applications pending, and I don't think Transcor, the opinion, answers the case as to whether they were known to the defendants or not. I don't think it matters. I think the takeaway from Transcor is that unless there's a very clear expression to disclaim this implication, then the law will presume the parties intend to include a license for the continuation patents. So finally, we totally agree today that it is the manifest intent of the parties that is at issue here. Now, during the briefing below and on appeal, Leviton didn't really want to rely on the manifest intent. They submitted a subjective intent declaration of the general counsel of Leviton, and they also tried to get into the record parole evidence. We don't think the parole evidence is relevant because there's nothing ambiguous in the agreement. The parole evidence itself, even if it were admitted, it doesn't really advance Leviton's arguments at all. And then, of course, the subjective intent of one party is totally irrelevant to claim construction, to contract interpretation. What one party secretly believed in its mind is not relevant to determining the objective intent of a contract. And so all of that should be disregarded. We should stick to the contract that's before the court. Excuse me one second. Unless there are any other questions from the bench, I'm going to sit down here. All right. Thank you very much. Mr. Schatzer, you've got a minute and a half. Judge Lind, going back to your point about the agreement we have here, Mr. Long was quoting from AMP, and I think we need to be really clear about what the AMP court said. The license in the AMP court was to the subject invention. It wasn't to specific patents. And that's why the court found that whatever patent, if you got a patent later on, because you had licensed a subject invention, if you got a patent later on, you're derogating because you're taking away from the right to use a subject invention. In fact, they distinguished that case from the case we have here. Specifically in AMP, the court said the facet of this licensing agreement, which is of crucial importance and which plaintiff ignores, is that its license to the government is to use an idea and not just the Byram patent itself. And Judge Davis concurring said the license here is broader than licenses which are explicitly tied to specified patents as distinguished from discoveries and inventions. The license here is on the 558 and 766. The reason the products are identified is not so they can sell these products. It's to narrow that agreement. The only reason they're done. You have the same products involved in the litigation in California and the ITC, right? We do, but there's no derogation because we're not suing them on the 558 or the 766. We didn't give them a license to sell the products. We gave them a license not to sue them on the patents. And that right hasn't been derogated because we haven't filed that lawsuit. If we sued them on the 558 or the 766, we wouldn't be here because we're not allowed to do that. But we are allowed to sue them on the products because we didn't give them a product license. That's not what the agreement says. If you want to look at the intent of the parties, the number one place to look is Section 2.1 of the agreement where it spells out the covenant not to sue. And it says it's a covenant not to sue on the 558 and the 766. And not only that, but it's restricted to these two product categories. Okay. Thank you very much. Both counsel, the case is submitted. That concludes our arguments for today. All rise. The honorable court has adjourned until tomorrow morning at 10 a.m. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.